UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBRA WRIGHT,

        Plaintiff,

                           Case No.: 8:07-cv-1586-T-33MSS

vs.

STANDARD INSURANCE COMPANY,

        Defendant.
_____/

**<u>ORDER</u>**

This matter comes before the Court pursuant to Plaintiff Debra Wright's Motion for Partial Summary Judgment as to the Issue of Contract Formation and Breach of Binding Life Insurance Contract (Doc. # 32), which was filed on June 12, 2008. Defendant Standard Insurance Company filed its Memorandum of Law in Opposition to Plaintiff Wright's Motion for Partial Summary Judgment on June 30, 2008. (Doc. # 36).  In addition, on July 8, 2008, Wright filed her Second Motion to Amend Complaint (Doc. # 37).  Standard filed its Memorandum of Law in Opposition to Wright's Second Motion to Amend on July 25, 2008. (Doc. # 39). In addition, Standard filed its Motion for Summary Judgment on July 28, 2008. (Doc. # 40). Wright filed her Response in Opposition to Standard's Motion for Summary Judgment on August 5, 2008. (Doc. # 44).

After due consideration and for the reasons stated in this Order, Wright's motion for partial summary judgment is denied without prejudice, Wright's second motion to amend her complaint is granted, and Standard's motion for summary judgment is denied without prejudice.

## I.   Procedural History

Wright commenced this action on August 3, 2007, by filing her complaint (the "State Court Complaint") against Standard in the Circuit Court for Polk County, Florida, Case Number 07-CA-4312. (Doc. ## 1, 2).  Standard was served with the summons, the State Court Complaint, and discovery documents on August 17, 2007. (Doc. # 1-3).  On September 6, 2007, Standard removed the case to this Court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332.

### A.   The State Court Complaint

Wright's State Court Complaint against Standard alleged that Standard failed to pay Wright the sum of $100,000 upon the death of Wright's husband, Clinton Wright (hereafter, the "Insured"). (Doc. # 2).  Specifically, Wright alleged:

> On or before April 19, 2005, in consideration of a premium paid by [the Insured], Defendant issued its written policy of insurance on the life of the Insured in the amount of $100,000.  Insured's policy named Plaintiff, Insured's wife, as beneficiary.  Plaintiff does not have a copy of this insurance policy but through communications with Defendant, Defendant has

>acknowledged the existence and possession of the
>original policy. . . . Under the terms of the policy
>issued to Insured, Defendant promised to pay Plaintiff
>the sum of $100,000, on due proof of the death of the
>Insured during the term of the policy.  On April 20,
>2007, while the policy was in full force and effect,
>the Insured died of natural causes, or as the case may
>be in such circumstances as to come within the terms of
>the life insurance policy and to render defendant
>liable to pay Plaintiff as beneficiary the sum of
>$100,000.  On or about May 11, 2007, Plaintiff gave
>Defendant due notice and proof of the death of Insured.
>. . . Plaintiff has thus demanded payment of the
>$100,000 due, but Defendant has refused and still
>refuses to pay any part of that sum.

(Doc. # 2 at ¶¶ 4-8).

Wright's State Court Complaint asserted two counts against
Standard: count one for breach of life insurance contract and
count two for civil theft. (Doc. # 2).

**B.**   **The Amended Complaint**

On September 10, 2007, prior to Standard filing an answer or
other responsive pleading to the State Court Complaint, Wright
filed her Amended Complaint. (Doc. # 4).  Wright's Amended
Complaint joined as a defendant Sunbelt Website Marketing, Inc.
(hereafter, "Sunbelt") (Doc. # 4).  Further, in the Amended
Complaint, Wright augmented the amount sought from $100,000 to
$200,000. (Doc. # 4).  Wright's Amended Complaint alleged in
pertinent part:

>On or before April 19, 2005, Defendant Sunbelt, the
>insurance agent for Defendant Standard Insurance
>Company, and Clinton Wright had a valid and binding

-3-

agreement to, and Defendant Sunbelt did take steps and/or actions to secure $200,000 in life insurance benefits for the benefit of Clinton Wright's beneficiaries.   Defendant Sunbelt had a duty to use reasonable skill and care in securing the requested coverage.   If Defendant Sunbelt could not obtain the appropriate coverage they had a duty and responsibility to advise Clinton Wright and/or his beneficiaries in a timely manner of their inability to do so.   Upon information and belief, Clinton Wright, now deceased, discussed his specific life insurance needs with Defendant Sunbelt and Defendant Sunbelt was aware of the specific amount of life insurance benefits sought. Moreover, based upon Clinton Wright's expressed needs, Defendant Sunbelt should have been made aware of the specific amount of coverage that Clinton Wright needed. In reliance on Defendant Sunbelt's representations that they had secured the requested coverage Clinton Wright did not seek to supplement or [obtain] alternative life insurance coverage.   Had Clinton Wright been aware that Defendant Sunbelt was unable to obtain the full life insurance coverage from one insurance carrier he could and would have applied and qualified for life insurance with a different life insurance company.   However, after Clinton Wright's application for coverage Defendant Sunbelt assured Mr. Wright that Standard Insurance Company approved his request for a $200,000 life insurance policy.   Consequently, Clinton Wright religiously paid his premiums to Standard Insurance Company for two years on Sunbelt's representation, and Standard Insurance Company's express acknowledgment, that he was paying for $200,000 in coverage.   On or before April 19, 2005, in consideration of a premiums [sic] paid by decedent Clinton Wright . . . Defendant Standard Insurance Company agreed to issue its written policy of insurance on the life of the insured in the amount of $200,000. . . .   Under the terms of the policy issued to Insured, Defendant Standard Insurance Company promised to pay Plaintiff the sum of $200,000, on due proof of the death of the Insured during the term of the policy.

(Doc. # 4 at ¶¶ 5-10).

Wright's Amended Complaint maintained the same counts against Standard: breach of life insurance contract and civil theft. (Doc. # 4 at ¶¶ 17-25). However, the Amended Complaint added a third count against Sunbelt for negligent procurement of life insurance. (Doc. # 4 at ¶¶ 26-33).

Among other allegations, Wright asserted that Sunbelt "had an express agreement with Clinton Wright that they would undertake reasonable care to secure appropriate life insurance coverage" and that "Sunbelt knew or should have known, either through actual knowledge or specific course of dealings with Standard Insurance Company, that Standard Insurance Company would not honor Clinton Wright's request for $200,000 in life insurance benefits." (Doc. # 4 at ¶ 27, 32).

C.   **Remand Proceedings**

On September 10, 2007, Wright filed her Motion to Remand to State Court (Doc. # 5), asserting that complete diversity of citizenship was destroyed by the addition of Sunbelt as a Defendant in the Amended Complaint. (Doc. ## 4, 5). Wright explained that Defendant Standard is an Oregon corporation, Plaintiff Debra Wright is a citizen of Florida, and Defendant Sunbelt is a Florida corporation. Wright noted that "federal courts have fashioned a presumption in favor of remand to state court," (citing Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d

-5-

405, 411 (11th Cir. 1999)) and Wright requested that this Court remand the case to the Polk County Circuit Court. (Doc. # 5).

On September 26, 2007, Standard filed its response to Wright's motion to remand. (Doc. # 7). Standard asserted that Wright sought to join Sunbelt as a Defendant solely to destroy complete diversity and to divest this Court of its jurisdiction over this case.   Standard also argued that Wright's claims against Sunbelt were premature: "Wright is precluded from bringing any negligence action against the insurance agent [here, Sunbelt] until the final adjudication of her contract claim against Standard, and then only if Standard's benefits determination is upheld by the Court.  Wright's purported claim against the agent is legally barred and cannot be used as a vehicle for avoiding the federal forum to which Standard is entitled." (Doc. # 7 at 4).

Standard relied on <u>Blumberg v. USAA Casualty Ins. Co.</u>, 790 So. 2d 1061, 1065-1066 (Fla. 2001) and federal courts interpreting <u>Blumberg</u> to support its position that Sunbelt's joinder was improper and premature.  <u>See</u> <u>Blumberg</u>, 790 So. 2d at 1065-1066 ("Negligence/malpractice cause of action" against an insurance agent "accrues when the client incurs damages at the conclusion of the related or underlying judicial proceedings.");

-6-

Essex Ins. Co. v. Rodgers Bros. Servs., Inc., 8:05-cv-648-T-27TBM, 2006 U.S. Dist. LEXIS 57291, at *3 (M.D. Fla. Aug. 11, 2006)("A claim against an insurance agent for negligence does not accrue until the underlying action against the insurance company is final."); Looney v. Protective Life Ins. Co., 8:07-cv-1020-T-17TBM, 2007 U.S. Dist. LEXIS 65812, at *10 ("Under Florida law, an insured's cause of action against an agent for negligence does not accrue until the proceedings against the insurer are final.").

On November 11, 2007, this Court entered an Order denying Wright's motion to remand and dismissing Wright's claim against Sunbelt. (Doc. # 18). This Court determined that "Plaintiff's negligence claim against Sunbelt is . . . premature, and the Plaintiff will not be injured if joinder is not allowed." (Doc. # 18 at 2). This Court directed Wright to file an amended complaint. (Doc. # 18 at 2-3).

**D.   Third Amended Complaint**

On November 26, 2007, Wright filed her Third Amended Complaint which is an amalgamation of the State Court Complaint and the Amended Complaint. (Doc. ## 2, 19). The Third Amended Complaint seeks $200,000 pursuant to an alleged written policy of insurance between Wright and Standard. (Doc. # 19 at ¶¶ 7-8).

-7-

Sunbelt's allegedly negligent conduct is discussed in the Third Amended Complaint, but Sunbelt is not named as a party pursuant to this Court's November 11, 2007 Order. (Doc. ## 18, 19).  Once again, Wright asserted two counts against Standard: count one for breach of life insurance contract and count two for civil theft.

On December 12, 2007, Standard filed its Motion to Dismiss Count II of the Third Amended Complaint (Doc. # 22) asserting that Wright's count for civil theft was subject to dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Wright filed her response in defense of the civil theft count on January 3, 2008. (Doc. # 24).  On April 16, 2008, after a thorough examination of Florida law, particularly Florida Statute Section 772.11 concerning civil theft, this Court dismissed Wright's civil theft count against Standard with prejudice. (Doc. # 26).

Thereafter, on June 23, 2008, upon motion of Standard (Doc. # 28), this Court issued an Order requiring Wright to pay $5,938.50 to Standard to reimburse Standard for the attorney's fees incurred in defending against the baseless civil theft count. (Doc. # 35).[1]

---

[1] Wright was given an opportunity to contest the assessment of Standard's attorneys's fees in regards to the civil theft claim, but Wright failed to file a response to Standard's motion.  This Court granted the motion for attorney's fees on the civil theft

## II.  **Wright's Motion to Amend and Allegation of Oral Contract**

On June 12, 2008, Wright filed her Motion for Partial Summary Judgment as to the Issue of Contract Formation and Breach of a Binding Insurance Contract (Doc. # 32).  Although each of Wright's complaints (the State Court Complaint, the Amended Complaint, and the Third Amended Complaint) were predicated upon a written life insurance contract, Wright asserts in her motion for partial summary judgment for the first time in this litigation that Wright is entitled to summary judgment on the basis of an oral contract for life insurance.  (Doc. # 32).

On June 30, 2008, Standard filed its Memorandum in Opposition to Wright's motion for partial summary judgment, correctly pointing out that the operative complaint is devoid of any allegations regarding an oral contract.  Standard properly asserts: "Plaintiff is forbidden to use her summary judgment motion as a vehicle for presenting a new theory of liability that is not pled in her complaint." (Doc. # 36 at 2).

Apparently in response to Standard's arguments concerning improper amendment by way of summary judgment motion, Wright filed her Second Motion to Amend Complaint (Doc. # 37).  At this point in the litigation it is important to remember that Wright's

_____

count as an unopposed motion. (Doc. # 35 at 1).

operative complaint is the Third Amended Complaint, and the only remaining count of that complaint is against Standard for breach of a written life insurance contract.

Nevertheless, Wright explains in her Second Motion to Amend:

> Based upon the limited information to which Plaintiff had access prior to initiating suit[,] counsel for Plaintiff initially framed her Complaint as a breach of a written insurance policy.  On April 10, 2008, Counsel for Plaintiff conducted the deposition of Spencer Vice the insurance broker who represented to Plaintiff's husband that he had purchased an insurance policy with Defendant Standard Insurance.  During the course of the deposition[,] it became apparent that the broker had not received any written policy memorializing the insurance agreement.

(Doc. # 37 at 1).

Wright has attached her proposed Fourth Amended Complaint to the Second Motion to Amend. (Doc. # 37-2).  Wright's proposed Fourth Amended Complaint asserts that "Defendant" Sunbelt acted as Standard's actual or apparent agent and took steps "on behalf of Defendant Standard to secure $200,000 in life insurance benefits for the benefit of [Insured's] beneficiaries." (Doc. # 37-2 at ¶ 4).[2]  Wright alleges that Sunbelt "assured [Insured] that [Standard] had approved his request for a $200,000 life

_____

[2]    This Court notes that Wright's proposed Fourth Amended Complaint refers to Sunbelt as "Defendant."  This Court assumes that such reference is made in error, as the case against Sunbelt was dismissed by Court order on November 20, 2007. (Doc. # 18).  Notably, the caption of the proposed Fourth Amended Complaint does not list Sunbelt as a defendant.

insurance policy. Consequently, [Insured] religiously paid his premiums to [Standard] for more than two years with [Standard's] tacit acknowledgment that he was paying for $200,000 in coverage." (Doc. # 37-2 at ¶ 5). Further, Wright alleges that Standard "either agreed to or ratified its actual or apparent agents' actions agreeing to an issuance of an oral policy of insurance on the life of the Insured in the amount of $200,000." (Doc. # 37-2 at ¶ 6). After the death of Insured during the terms the policy, Wright demanded $200,000 from Standard, but Standard paid $100,000, rather than the requested $200,000. (Doc. # 37-2 at ¶¶ 8-11).

Standard stridently opposes Wright's request to amend her complaint. Standard asserts that Wright's request to amend should be denied even under the liberal pleading rules as enunciated in Rule 15(a) of the Federal Rules of Civil Procedure and binding case law.

### A.   <u>Legal Standard for Motion to Amend</u>

Federal Rule of Civil Procedure 15(a) provides that when a party seeks leave to amend "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "The grant or denial of an opportunity to amend is within the discretion of the district court." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). In <u>Foman</u>, the Supreme Court advised that "[i]f the underlying facts

or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Id.

The Supreme Court further identified factors a court should consider in deciding a motion for leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." Id.; see also Czeremcha v. Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO, 724 F.2d 1552, 1556 (11th Cir. 1984) (citing Foman, 371 U.S. at 182).  Even if the reasons to deny leave to amend are substantial, the Court should consider the prejudice to the moving party in the absence of the requested amendment.  Lockett v. Gen. Fin. Loan Co. of Downtown, 623 F.2d 1128, 1131 (5th Cir. 1980).[3]

**B.   Analysis**

Wright seeks leave to file her proposed Fourth Amended Complaint.   At the outset, the Court notes that, absent amendment, Plaintiff's Third Amended Complaint must be dismissed.

---

[3]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted all cases decided by the Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981, as binding precedent.

This is because only one count remains: Wright's claim for breach of a written contract for $200,000, and Wright admits that such contract does not exist.

Standard seeks an order denying Wright's request to amend. Standard asserts that Wright did not diligently investigate the facts of the case prior to filing the complaint and that Wright's indolence should not be rewarded by the Court.[4]   In addition, Standard submits that allowing the amendment would cause undue delay in this case, would cause severe prejudice to Standard, would be futile, and that Wright's request to amend is made in bad faith.

This Court agrees with Standard that allowing amendment would result in a substantial delay of this case.  A pre-trial conference is set to take place in less than one month.  A new complaint would essentially take this case back to square one, and would necessitate the re-opening of discovery.  The pre-trial conference and trial would necessarily be delayed.

---

[4] Standard's comments are not without a basis.  On July 14, 2008, this Court issued an order (Doc. # 38) denying Wright's request for an extension of time and remarking, "the Court finds that Plaintiff failed to demonstrate the requisite diligence in securing an extension of time for discovery before the deadline expired." (Doc. # 38 at 3).  The Court further remarked: "The Court further finds that Plaintiff lacked diligence conducting the subject oral and written discovery during the relevant period, from entry of the Scheduling Order in December of 2007, through the May 27, 2008, deadline agreed to by the parties." (Doc. # 38 at 3).

This Court also agrees with Standard that allowing amendment of the complaint would result in some prejudice to Standard. Standard correctly states:

> Discovery in this case has closed, and Plaintiff now seeks to base her lawsuit on an _entirely different contract_ from the one alleged in all her pleadings. Not only does she want to sue under a different contract, but under a purported _oral_ insurance policy, the formation of which is described quite vaguely in the proposed fourth amended complaint. If the filing of the proposed fourth amended complaint is permitted, Standard would plainly need (and be entitled) to take discovery regarding the alleged formation and content of the newly asserted oral contract.

(Doc. # 39 at 9)(emphasis in original).

Wright's first set of complaints was based on a written contract. After a year of hard-fought litigation, Wright has come to the realization that Standard never issued a written policy with a $200,000 benefit. Rather than dismissing her suit, Wright seeks to proceed under the theory of an oral agreement.

As noted, discovery has closed, the dispositive motions deadline has expired, and the case has mediated, all under a theory of the case that Wright now admits is false. Wright's misguided approach has undoubtedly caused Standard to incur fees and costs over and above what it should in this matter.

Wright's delay is undue, and the prejudice to Standard is great. However, this Court determines that Wright has not acted in bad faith, as alleged by Standard. It is more likely that, in

-14-

bringing this suit, Wright's counsel failed to perform an adequate investigation of the facts.

Although many factors militate in favor of denying amendment, particularly considering the number of times the complaint has indeed been amended and the factors discussed in <u>Foman</u>, this Court is still inclined to give Wright one last bite at the proverbial apple. However, at this juncture, the Court admonishes Wright that her proposed Fourth Amended Complaint is deficient, and were it to be filed "as is," this Court would dismiss it.[5]

Recently, the Supreme Court issued <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007), in which the Court explained:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligations to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

---

[5] Amendment of the complaint would be a futile gesture if Wright were granted leave to file the proposed Fourth Amended Complaint. However, this Court is able to address this deficiency by allowing Wright to file a version of the Fourth Amended Complaint drafted with the benefit of performing additional research into this matter.

> enough to raise a right to relief above the speculative
> level, on the assumption that all the allegations in
> the complaint are true (even if doubtful in fact).

Twombly, 127 S. Ct. at 1964-65 (internal citations omitted).

This Court recognizes that Wright's proposed Fourth Amended

Complaint has not yet been attacked by a Rule 12(b)(6) motion.

Nevertheless, the Supreme Court's guidance regarding the standard

for stating a claim applies, especially in light of the numerous

transformations that this complaint has undergone throughout the

litigation thus far.

Furthermore, the Eleventh Circuit has recently elaborated on

the standards set forth in Twombly.  Davis v. Coca-Cola Bottling

Co. Consolidated, 516 F.3d 955 (11th Cir. 2008).  In Davis, the

complaint was a shot-gun pleading and was drafted so poorly that

the defendant and the district court could do little more than

pose an educated guess as to its allegations.[6]  The district

court granted summary judgment in favor of defendant, and the

Eleventh Circuit reversed and remanded.  The Eleventh Circuit

cautioned the attorneys as follows:

---

[6]   Specifically, the Davis court remarked, "No competent
lawyer . . . could compose an answer" to the plaintiffs' complaint.
Id. at 980-981.  In addition, the Davis court noted, "Faced with
these pleadings, how the district court could have made heads or
tails out of plaintiffs' allegations, and which affirmative
defenses applied to which causes of action, is beyond us.  It took
several rounds of pleadings . . . for the court even to begin the
process of narrowing the issues." Id. at 981.

If the framers of the Federal Rules of Civil Procedure could read the record in this case – beginning with the plaintiffs' complaint and CCBC's answer and continuing to the district court's final order granting summary judgment – they would roll over in their graves. In fashioning the Rules, they assumed that complaints would be drafted as clearly and definitively as possible, so that the defendant could understand the cause(s) of action the plaintiff was asserting and frame a responsive pleading, and the district court, having a clear and definitive response before it, could recognize the parties' claims and defenses, identify the issues of fact to be litigated, and proceed to a just result.  The framers also assumed that the lawyers appearing before the district courts would adhere to the standards of professional responsibility and conduct, and that, as officers of the court, would be aware that the federal courts constitute a scarce resource for resolving disputes and that their failure to adhere to these standards would likely yield countless untoward, and totally unacceptable, consequences.

Id. at 979.

Due to the number of attempts Wright has had to state her claim, Wright's Fourth Amended Complaint should "clearly and definitively" set forth her claims against Standard.  Id. Wright's count for breach of oral life insurance contract must set forth the following elements: "the subject matter; the risk insured against; the amount of insurance; the rate of premium; the duration of the risk; and the identity of the parties." Southtrust Bank and Right Equip. Co. of Pinellas County, Inc. v. Exp. Ins. Servs., Inc., 190 F. Supp. 2d 1304, 1307 (M.D. Fla. 2002)(citing Collins v. Aetna Ins. Co., 103 Fla. 848, 850, 138

So. 369 (Fla. 1931)).

In addition, to the extent Wright's Fourth Amended Complaint relies on the principle of apparent authority, such pleading should comply with the standards set forth in <u>Security Union Title Ins. Co. v. Citibank, N.A.,</u> 715 So. 2d 973, 975 (Fla. 1st DCA 1998)("the principle of apparent authority embraces the following three elements: (1) a representation by the principal, (2) reliance on that representation by a third person, and (3) a change in position by the third person in reliance on the representation.")(citing <u>Fidelity & Cas. Co. v. D.N. Morrison Constr. Co.</u>, 116 Fla. 66, 156 So. 385, 387 (Fla. 1932)).

Wright shall file a refined version of the Fourth Amended Complaint within ten (10) days of the date of this Order consistent with the foregoing discussion.

## III. <u>Motions for Summary Judgment</u>

On June 12, 2008, Wright filed her motion for partial summary judgment on the issue of contract formation and breach of a binding life insurance contract (Doc. # 32). Wright argues, inter alia, that "the facts establish the existence of a binding insurance contract through (1) Standard's actual or apparent agent's express acceptance of Mr. Wright's request for insurance coverage or (2) Standard's tacit or silent acquiescence of Mr. Wright's request for insurance coverage, i.e. their ratification

-18-

of Mr. Wright's insurance request." (Doc. # 32 at 3, ¶ 9).

Wright's summary judgment arguments concerning the formation and breach of an alleged oral contract for life insurance are simply premature at this stage of the proceedings.  The Court reminds Wright that, at this moment, the operative complaint does not mention an oral contract and is predicated on the breach of a written contract.   After Wright files her Fourth Amended Complaint specifically detailing the alleged oral contract and alleged agency relationships, this Court will consider summary judgment motions.

Likewise, although Standard argues that it is entitled to summary judgment regardless of what Wright contends now or in the future, Standard's motion for summary judgment (Doc. # 40) is also due to be denied.[7]

In this case, the Court finds it appropriate to allow Wright to amend her complaint and because new theories of the case have been presented, the Court re-opens discovery.  The discovery deadline is extended until December 31, 2008.  The dispositive motions deadline is extended until January 30, 2009.  This Court hereby cancels the pre-trial conference currently set to take

---

[7]  Standard asserts: "Quite simply, Plaintiff has no viable claim against Standard, and Standard is manifestly entitled to summary judgment." (Doc. # 40 at 2).

place on October 15, 2008.  This Court will hold a pre-trial conference in this case on March 10, 2009 at 10:00 a.m.  This case is set for the April 6, 2009 trial term.[8]

This Court's reasoning is firmly grounded in Rule 56(c) of the Federal Rules of Civil Procedure, which states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Upon consideration of Wright's contemplated amendment of the complaint and the re-opening of discovery ordered herein, the Court denies Wright's motion for partial summary judgment and Standard's motion for summary judgment without prejudice.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Plaintiff Debra Wright's Motion for Partial Summary Judgment as to the Issue of Contract Formation and Breach of Binding Life Insurance Contract (Doc. # 32), is **DENIED WITHOUT PREJUDICE.**

(2)  Plaintiff's Second Motion to Amend Complaint (Doc. # 37) is

---

[8]  This Court will issue an Amended Case Management and Scheduling Order reflecting these deadlines forthwith.

-20-

**GRANTED**. Plaintiff shall file her Fourth Amended Complaint consistent with this Order within ten (10) days of the date of this Order.

(3) Standard's Motion for Summary Judgment (Doc. # 40) is **DENIED WITHOUT PREJUDICE**.

(4) This Court will issue an Amended Case Management and Scheduling Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>24th</u> day of September 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record